2023 IL App (2d) 220260-U
No. 2-22-0260
Order filed February 24, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, as Successor in Interest to Lawyers Title Insurance Corporation, Directly and as Subrogee of David Erickson, Wendy Erickson, Michael Schumacher, and Karen Schumacher, | ) ) ) ) ) ) Appeal from the Circuit Court of McHenry County. |
| Plaintiff | ) ) |
| v. | ) No. 18-LA-157 ) ) ) |
| ROBERT C. JENSEN and DEBORAH A. JENSEN, | ) ) ) |
| Defendants and Third-Party Plaintiffs | ) ) |
| (Fox Title Company, Third-Party Defendant and Petitioner-Appellee; David Erickson, Wendy Erickson, Michael Schumacher, and Karen Schumacher, Third-Party Defendants; William P. Petsche and Melei Petsche Spencer, Respondents-Appellants). | ) ) ) ) ) Honorable ) Kevin G. Costello, ) Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not abuse its discretion in awarding against third-party plaintiff's attorneys the fees third-party defendant incurred after the attorneys learned that the claim against third-party defendant was baseless yet refused to dismiss the claim and instead sought further discovery.

¶ 2    William P. Petsche and the law firm of Melei Petsche Spencer (collectively, MPS), attorneys for defendants and third-party plaintiffs, Robert C. Jensen and Deborah A. Jensen (Jensens), appeal from a judgment imposing attorney fees as a sanction under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). MPS contends that the trial court abused its discretion in imposing the sanction. We hold that the court properly found that MPS violated Rule 137 and that the sanction was not an abuse of discretion. Therefore, we affirm.

¶ 3                            I. BACKGROUND

¶ 4    On May 4, 2018, plaintiff, Fidelity National Title Insurance Company (FNTI), as subrogee of David Erickson (David), Wendy Erickson (Wendy), Michael Schumacher (Michael), and Karen Schumacher (Karen) (collectively, insureds), filed a complaint against defendants, Robert C. Jensen and Deborah A. Jensen (Jensens), seeking $61,000 in damages for breach of a warranty deed. FNTI alleged that, in 2007, the insureds purchased a lot (Lot 1) from the Jensens, who conveyed to the insureds a warranty deed. At the time of the sale, FNTI's predecessor in interest, through its agent, Fox Title Co. (Fox Title), issued to the insureds an owner's title-insurance policy, insuring against any loss resulting from any defect in, or encumbrance upon, the title to Lot 1. In 2010, the insureds discovered that there were four easements, undisclosed in the 2007 title, granting the owners of neighboring lots access to Pistakee Lake. As a result, the insureds tendered a claim to FNTI, which, after investigation, determined that the easements diminished the value of Lot 1 by $61,000. Thus, FNTI paid the insureds $61,000 under the policy.

¶ 5    The Jensens retained MPS to represent them against FNTI's lawsuit. On July 1, 2020, the Jensens filed a third-party complaint against the Ericksons, Schumachers, and Fox Title. The complaint's common allegations recounted the insureds' sale of Lot 1 to the Jensens. The complaint then alleged that, "[u]pon information and belief, at all times relevant, [Wendy] and/or

[Karen] were acting individually and as agents, servants, and employees of [Fox Title]." Further, "[u]pon information and belief, [Wendy] and/or [Karen] altered the [t]itle [c]ommitment issued for the Lot 1 property so as to prevent [the easements] from appearing on said [t]itle [c]ommitment." Later, the insureds filed a claim with FNTI, which paid out $61,000 under its title policy because there were undisclosed easements on Lot 1. FNTI then sued the Jensens for $61,000.

¶ 6    The third-party complaint set out three claims. Count I alleged fraud by the Ericksons and the Schumachers. Specifically, count I alleged that, "[p]rior to and during the sale of [Lot 1], the Ericksons and Schumachers represented to the Jensens that" (1) Wendy and David would draft the warranty deed "to include all relevant information regarding [Lot 1];" (2) "[Wendy] and/or [Karen], as employees, servants, and agents of Fox Title," would prepare the title commitment for Lot 1 "and include all relevant information regarding [Lot 1]" on the title commitment; and (3) "Fox Title, as employer and principal for [Wendy] and/or [Karen], would handle and process the closing of [Lot 1]." Count I further alleged that the Ericksons and the Schumachers made these representations while knowing they were false because the warranty deed and title commitment they prepared did not disclose the easements on Lot 1.

¶ 7    Count II, claiming tortious interference with a contract, alleged that, before agreeing to sell Lot 1 to the Ericksons and the Schumachers, the Jensens had agreed to sell Lot 1 to a third party. The Ericksons and the Schumachers intentionally interfered with the agreement to sell to the third party by making a higher offer for Lot 1 and by deliberating preparing the warranty deed and title commitment to exclude the easements on Lot 1.

¶ 8 Count III alleged that the Ericksons and the Schumachers engaged in a civil conspiracy to obtain the insurance proceeds under the title policy by deliberately omitting the easements when they prepared the warranty deed and title commitment.

¶ 9 As to Fox Title, the third-party complaint alleged only a theory of vicarious liability. Specifically, the complaint alleged that "[Wendy] and/or [Karen] *** act[ed] *** as agents, servants, and employees of [Fox Title]" and that "Fox Title [was the] employer and principal for [Wendy] and/or [Karen]."

¶ 10 On February 1, 2021, Fox Title filed a motion, under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)), to dismiss the third-party complaint as to Fox Title. Fox Title argued that the complaint contained no allegations of wrongdoing by Fox Title and that the allegation that Wendy and Karen were agents, servants, or employees of Fox Title was false. Attached to the motion to dismiss were the affidavits of (1) Wendy and (2) Daniel Rigby.

¶ 11 In her affidavit, Wendy averred that at no time during the sale of Lot 1 was she an employee, servant, or agent of Fox Title. She further denied that she ever represented to the Jensens that she would handle the processing for the closing or prepare the title commitment, either individually or as an agent of Fox Title.

¶ 12 In his affidavit, Rigby averred that he was the president of Fox Title. He further averred that "[a]t no time before, after, or during the transaction at issue[ ] were [Wendy] [or] [Karen] [ ] an employee, servant, or agent of [Fox Title]."

¶ 13 On February 26, 2021, the Jensens filed a motion (1) to extend the time to respond to the motion to dismiss and (2) for leave to conduct discovery. They sought written discovery and to depose both Wendy and Rigby on whether Wendy and Karen had been agents, servants, or

employees of Fox Title. The court granted the motion, striking the briefing schedule on the motion to dismiss and setting a discovery deadline.

¶ 14    Thereafter, the Jensens and Fox Title had a discovery dispute, with Fox Title providing some discovery and contesting disclosure of other materials. On July 14, 2021, Fox Title produced some of the written materials sought by the Jensens, including its entire file on the Lot 1 transaction.

¶ 15    Subsequently, the trial court set October 25, 2021, as the deadline for discovery, including the depositions of Wendy and Rigby. On October 25, 2021, MPS filed a motion to extend the discovery deadline by at least 21 days because the Jensens' lead attorney had been ill. On November 2, 2021, the court granted the motion and gave the Jensens an additional 21 days to complete discovery.

¶ 16    However, on the next day, November 3, 2021, MPS filed a motion to withdraw as counsel, asserting that, for professional reasons, it could no longer represent the Jensens. On November 16, 2021, over Fox Title's objection, the trial court granted the motion to withdraw. The court set the matter for a December 6, 2021, status hearing on Fox Title's motion to dismiss the third-party complaint. On December 6, 2021, the court granted Fox Title's motion to dismiss the complaint.

¶ 17    On January 13, 2022, Fox Title filed a Rule 137 motion for sanctions against the Jensens and MPS. In the motion, Fox Title identified two submissions that it alleged were not well grounded in fact or warranted by existing law: (1) the Jensens' third-party complaint and (2) the Jensens' February 26, 2021, motion (a) to extend the time to respond to Fox Title's motion to dismiss and (b) for leave to conduct discovery. Fox Title asserted that there was no truth to the third-party complaint's allegations that Wendy and Karen were Fox Title's employees, servants, or agents and that Fox Title was the employer and principal of Wendy and Karen.

¶ 18    Fox Title further asserted as follows. Fox Title's attorney had thoroughly investigated the allegations regarding Fox Title and found no evidence that either Wendy or Karen was ever Fox Title's agent, servant, or employee. Nor did any of the discovery conducted by MPS produce any evidence that either Wendy or Karen was ever Fox Title's agent, servant, or employee. On February 1, 2021, Fox Title filed its motion to dismiss the third-party claim against it because there was no evidence of an agency relationship between Fox Title and either Wendy or Karen. Rather than dismiss the action, MPS filed the February 26, 2021, motion. Later, on August 13, 2021, Fox Title's attorney sent MPS a letter, stating that there was no evidence of agency between Fox Title and either Wendy or Karen and asking MPS to dismiss Fox Title from the third-party action. MPS refused to dismiss Fox Title, instead obtaining the court's permission to depose Wendy and representatives of Fox Title on or before October 25, 2021. However, MPS never issued any notice to depose Wendy or a Fox Title representative. Instead, MPS obtained an extension of time to conduct the depositions, but, the very next day, moved to withdraw as counsel.

¶ 19    Fox Title asserted that a reasonable investigation before filing the third-party complaint would have revealed no employment or other agency relationship between Fox Title and Wendy or Karen. Also, MPS should have known that the agency allegations were false when it filed the complaint *and* later when it persisted in seeking further discovery. Thus, Fox Title sought $34,995.13 in fees and costs related to defending against the third-party complaint.

¶ 20    On April 13, 2022, the trial court conducted a hearing on Fox Title's Rule 137 motion. On that same date, MPS filed a cross-motion for fees against Fox Title. The court allowed MPS to file a supplemental response to Fox Title's Rule 137 motion.

¶ 21    On May 26, 2022, the trial court issued a 20-page memorandum decision and order. After thoroughly discussing the case's background, including the discovery that had been sought and

produced, the court found as follows. The only " 'evidence' " that the Ericksons and the Schumachers were agents, servants, or employees of Fox Title was the fact that Wendy placed an order for a title commitment with Fox Title. This fact "[did] not make [Wendy] an agent or employee of Fox Title but rather a client." Nonetheless, MPS filed its third-party action alleging that Fox Title had an agency relationship with Wendy and Karen. Moreover, despite Rigby's affidavit unequivocally stating that neither Wendy nor Karen was ever an agent, servant, or employee of Fox Title, MPS refused to dismiss Fox Title and insisted on conducting discovery related to the agency/employment issue. On July 14, 2021, Fox Title produced its entire file related to the Lot 1 transaction; those documents established unequivocally that Wendy and Karen were involved with Fox Title only as clients and not employees. Alternatively, even if Wendy and Karen were employees of Fox Title and had deliberately altered the title commitment to remove the easements, such tortious action would have been outside the scope of their employment, Thus, Fox Title would not have been vicariously liable for it.

¶ 22    The court concluded that "it [was] established that Jensens' [t]hird [p]arty [c]omplaint was not 'well grounded in fact and *** warranted by existing law' as required under [Rule 137]." But although "a strong case can be made that the [t]hird [p]arty [c]omplaint never should have been brought against Fox Title, without question the claims should have been voluntarily dismissed when Fox Title produced documentation proving it did not employ Ericksons or Schumachers." Thus, sanctions were warranted only for MPS's efforts to seek further discovery after July 14, 2021, when Fox Title produced documents conclusively showing that neither Wendy nor Karen was ever its agent, servant, or employee. Because MPS should have dismissed the Jensens on July 14, 2021, MPS was liable for reasonable attorney fees Fox Title incurred between that date and the dismissal of the third-party complaint. Accordingly, the court awarded Fox Title $3200 in

attorney fees relating to the third-party complaint and $1100 in fees relating to the motion for sanctions. The court declined to enter sanctions against the Jensens.

¶ 23    MPS filed this timely appeal.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, MPS contends that (1) the trial court abused its discretion in finding that the third-party complaint was not well-grounded in fact or warranted by existing law, (2) the court failed to consider the timing of the filing of the third-party complaint in determining whether MPS had reasonably inquired into the facts and law before filing the third-party complaint, and (3) the court misconstrued MPS's legal theories pled in the third-party complaint.

¶ 26    Fox Title has not filed an appellee's brief. Nonetheless, because the record is straightforward and we can readily address MPS's arguments without an appellee's brief, we will decide the merits of this appeal. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 27    Rule 137 provides, in pertinent part, that an attorney's signature on a pleading or motion certifies

>        "that to the best of his knowledge, information, and belief formed after reasonable
>        inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument
>        for the extension, modification, or reversal of existing law, and that it is not interposed for
>        any improper purpose, such as to harass or to cause unnecessary delay or needless increase
>        in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. Jan 1, 2018).

Implicit in Rule 137 is a requirement that " 'an attorney promptly dismiss a lawsuit once it becomes evident that it is unfounded.' " [Citation.] *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 13 (quoting *Rankin v. Heidlebaugh*, 321 Ill App. 3d 255, 267 (2001)). Appropriate sanctions

against counsel for violating the rule may include an order to pay the other party's reasonable attorney fees incurred because of the filing. Ill. S. Ct. R. 137(a) (Jan. 1, 2018).

¶ 28    The party seeking sanctions under Rule 137 bears the burden of proof. *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 243 (2000). The purpose of Rule 137 is to prevent abuse of the judicial process by sanctioning those who file vexatious and harassing actions based on unsupported allegations of fact or law. *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). The rule is penal in nature and, therefore, must be strictly construed, reserving sanctions for the most egregious cases. *Patton v. Lee*, 406 Ill. App. 3d 195, 202 (2010). Rule 137 is designed to discourage frivolous filings, not to punish parties for making losing arguments. *Arnold*, 2015 IL 118110, ¶ 15. We review for an abuse of discretion the trial court's ruling on a Rule 137 motion for sanctions. *Arnold*, 2015 IL 118110, ¶ 16. A court abuses its discretion when no reasonable person would agree with its decision. *Arnold*, 2015 IL 118110, ¶ 16.

¶ 29    MPS raises issues regarding its filing of the third-party complaint. However, the sole issue we need to address is whether the trial court abused its discretion in imposing attorney fees as a Rule 137 sanction based on MPS's refusal to dismiss Fox Title after July 14, 2021, and MPS's pursuit of further discovery. The court did not sanction MPS for filing the third-party complaint against Fox Title. The court sanctioned MPS for refusing to dismiss Fox Title—and instead seeking further discovery—after receiving written discovery on July 14, 2021, that showed there was no employment or other agency relationship between Fox Title and either Wendy or Karen. Thus, we need not consider whether the third-party complaint violated Rule 137 when filed. Instead, we will decide whether the trial court abused its discretion in imposing attorney fees for MPS's conduct after July 14, 2021.

¶ 30    Further, in deciding whether the trial court properly imposed sanctions under Rule 137, we emphasize that the only legal theory pled against Fox Title in the third-party complaint was based on vicarious liability, namely the doctrine of *respondeat superior*.  See *McNerney v. Allamuradov*, 2017 IL App (1st) 153515, ¶ 67.  Thus, in determining whether the trial court abused its discretion in imposing attorney fees under Rule 137, we need not address the underlying theories of liability alleged against the Ericksons and the Schumachers—we need only decide whether MPS should have dismissed Fox Title after learning that its theory of vicarious liability against Fox Title lacked arguable merit.

¶ 31    In imposing sanctions, the trial court found that, as of July 14, 2021, discovery had produced no evidence whatsoever that either Wendy or Karen was ever an agent, servant, or employee of Fox Title.  In so finding, the court noted that Rigby, the president of Fox Title, averred in his affidavit that neither Wendy nor Karen had ever been an agent, servant, or employee of Fox Title.  Additionally, the court emphasized that, on July 14, 2021, Fox Title produced its entire file regarding the Lot 1 transaction and that those materials unequivocally established that Wendy and Karen were not employees, servants, or agents of Fox Title but were instead mere clients.  Further, MPS did not dispute that discovery provided as of July 14, 2021, did not show that either Wendy or Karen had been an agent, servant, or employee of Fox Title.  At that point, it was unreasonable for MPS not to have dismissed Fox Title.

¶ 32    However, instead of dismissing Fox Title, MPS continued to resist Fox Title's motion to dismiss and persisted in seeking further discovery via the depositions of Rigby and Wendy, (1) even though both had unequivocally stated in their respective affidavits that there was no employment or other agency relationship, and (2) despite the fact that the file produced on July 14, 2021, did not contain one shred of evidence that such a relationship ever existed.  Moreover,

after insisting on further discovery via the two depositions, MPS never followed through but unexpectedly withdrew from the case the day after obtaining a 21-day extension to conduct the depositions.

¶ 33    Clearly, after July 14, 2021, MPS acted unreasonably in continuing to press its vicarious-liability theory against Fox Title. Because it became evident on July 14, 2021, that the claim against Fox Title was unfounded, MPS should have promptly dismissed Fox Title. See *Arnold*, 2015 IL 118110, ¶ 13. Thus, the trial court correctly found that MPS violated Rule 137 when, after July 14, 2021, it continued to pursue its third-party claim against Fox Title, and so the court did not abuse its discretion in awarding Fox Title attorney fees for having to continue its defense. Nor did the court abuse its discretion in awarding Fox Title attorney fees related to the Rule 137 sanctions motion.

¶ 34    Further, we note that MPS does not dispute the amount of the fees imposed. Thus, we do not address that issue.

¶ 35    Finally, considering the busy schedules of trial court judges, we commend the trial court here for its thorough and well-reasoned memorandum decision and order. The court meticulously laid out the background of the case. The court carefully explained its distinction between (1) MPS's filing the third-party complaint and (2) its pursuit of further discovery and refusal to dismiss Fox Title after it became apparent on July 14, 2021, that there was no arguable claim based on vicarious liability. Further, the court set out the established law and clearly explained its reasoning for imposing sanctions under Rule 137. The court's conscientious work was especially helpful in our disposition of this appeal.

¶ 36                                III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 38    Affirmed.